UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

K.D. on behalf of Q.L.B., a minor child (XXX-XX-8506)

CIVIL ACTION NO. 11-cv-0003

VERSUS

JUDGE FOOTE

U.S. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

K.D. filed an application for Supplemental Security Income on behalf of her daughter, Q.L.B., who suffers from health problems. Q.L.B. was born on February 16, 1999. She was 10 years old when ALJ Leslie John Rodriguez issued his written decision that denied the claim. The Appeals Council denied a request for review, and K.D. ("Plaintiff") filed this judicial appeal to seek the limited review that is available under 42 U.S.C. § 405(g).

Plaintiff raises a single issue on appeal. She argues that there is not substantial evidence to support the ALJ's finding that the child's limitation in the domain of acquiring and using information is less than marked. She suggests that the limitation in that domain is marked, if not extreme, which combined with the other findings would result in a finding of disability. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Three-Step Evaluation**

A three-step evaluation process is used to determine whether a child is disabled under the Act. See Swist ex rel. Green v. Barnhart, 177 Fed. Appx. 414, 416 (5th Cir. 2006). The first question is whether the child is engaged in substantial gainful activity, and the ALJ found that the child was not. The second question is whether the child has an impairment that is "severe" within the meaning of the regulations. The ALJ found that the child suffers from the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD), Major Depressive Disorder (MDD), asthma, headaches, allergic rhinitis, and atopic dermatitis.

The third question is whether those impairments are medically or functionally equivalent in severity to the impairments listed in the disability regulations. There is no

contention that the child's impairments met a listed impairment, so the question is whether the impairments functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for your self

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he or she has an extreme limitation in one domain or a marked limitation in two domains. Section 416.926a(d).

Moderate is not specifically defined, but a marked limitation is defined as "more than moderate" but "less than extreme." A marked limitation interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. Section 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. Section 416.926a(e)(3).

**Analysis**

The ALJ found that the child had a marked limitation in interacting and relating with others, but less than marked limitations in the other domains. Plaintiff argues that the evidence required the ALJ to also find a marked limitation in acquiring and using information. A finding of a marked limitation in a second domain would result in a finding of disability.

The regulations state that school-age children (age 6 to attainment of age 12) should be able to learn to read, write, and do math, and discuss history and science. A child will need to be able to take achievement tests, do group work, and enter into class discussions. She will also need to use those skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). The child should have the vocabulary and grammar skills to share information and ideas with individuals or groups by asking questions and expressing her own ideas. 20 C.F.R. § 416.926a(g)(2)(iv). The regulations provide examples of limited function in the domain, with the note that the

examples do not necessarily describe a marked or extreme limitation, which would depend on the age of the child and other factors. One example of a limitation in the domain includes when the child does not demonstrate understanding of words about space, size, or time; e.g., big/little, morning/night. Other examples are when the child cannot rhyme words, has difficulty recalling important things learned in school yesterday, has difficulty solving mathematics questions, or talks only in short, simple sentences and has difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3).

A physician who conducted a psychiatric evaluation in June 2009, when the child was in the third grade, wrote that she was 3/3 after five minutes on remembering. Her IQ was "estimated to be above average," and she was "intelligent and articulate." Tr. 249. A report card in December 2008 had grades of A in both Social Studies and Health, B in Science, C in Reading, and an F in both Language Arts and Math. The teacher commented that the child failed to complete homework and class assignments and did not read directions. Tr. 135. On the LEAP test, given when the child was in the third grade, she scored higher than 12% of third grade students nationally, with achievement fairly consistent in the areas tested. Tr. 171. Her scores were considered unsatisfactory, meaning she had not demonstrated the fundamental knowledge and skills needed for the next level of schooling. Tr. 172-73.

Plaintiff provided information about the child's functioning as part of the application process. She indicated that the child could be understood most of the time, could deliver telephone messages, repeat stories, and talk with family and friends, but could not tell jokes

accurately or explain why she did something. She was able to read simple words but not read and understand simple sentences or stories. She could spell most three or four-letter words and knew the days of the week and months of the year, but she did not know how to make correct change, tell time, or add and subtract numbers over 10. Tr. 111-13.

Dr. Gerald Dzurik, a pediatrician, and Jack Spurrier, Ed.D., state agency consultants, did not examine the child but reviewed her records and completed an evaluation form. They noted the failing scores on the LEAP test, the F's on the report card, and the allegation of a learning disability, together with a physician's estimate that the child's IQ was above average. They concluded that the child had a less than marked limitation in acquiring and using information, with the notation that the "cognitive limitations could be due to MDI (medically determinable impairment)." Tr. 284-86.

The ALJ reviewed this evidence and came to the same conclusion as the state agency consultants, who are recognized as highly qualified professionals who are also experts in Social Security disability evaluation. Their findings must be treated as expert opinion evidence of a non-examining source. Social Security Ruling 96-6p. The ALJ wrote that the child's grades and reports from her teacher show that she is "capable of performing academically, but lacks motivation to do so." She often refused to complete class work, even when given additional time. As did the state agency consultants, the ALJ observed: "Cognitive limitations could be due to a medically determinable impairment, such as ADHD." Tr. 21-22.

Plaintiff focuses on a provision of Social Security Ruling 09-1p and contends that it requires a finding of a marked limitation based on ADHD. The ruling states:

> *Could the child's medically determinable impairment(s) account for limitations in the child's activities?* If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.

The consultants and the ALJ acknowledged that the ADHD impairment could account for limitations in acquiring and using information, but there is also evidence to the contrary. The ALJ noted in discussing the domain of attending and completing tasks that the child is diagnosed with ADHD. Reports showed that she had stopped taking medication for the condition at times, but she improved after restarting. Tr. 23. The Commissioner points to medical records that state the child received three disciplinary referrals at school after discontinuing her medication, but after taking the medication her behavior improved and Mom was happy. Tr. 255. A physician noted during an April 2009 visit that the child was getting in trouble at school daily, but wasn't having behavioral problems while on medication. Tr. 257. Plaintiff reported during a medical visit in September 2009 that the ADHD was controlled. Tr. 300.

A condition that is controlled or controllable by medication is not disabling. Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988). The denial of a similar child disability claim was affirmed in Colar v. Astrue, 2011 WL 311355, adopted, 2011 WL 316537 (W.D. La. 2011), based on evidence that the child's ADHD was effectively controlled by medication. There are credible evidentiary choices in the record to support a conclusion that the child

does not have a learning disability. Her poor grades and test scores are largely the result of her refusal to complete assignments or read directions, which the evidence indicates could be caused by ADHD. But evidence also suggests the ADHD can be controlled by taking prescribed medication. The medication might not eliminate all symptoms of the condition, but the evidence suggests it can do so at least to the extent the child would have less than a marked limitation in acquiring and using information. Perhaps other conclusions could be drawn from the record, but the result reached by the ALJ is reasonable and supported by credible evidentiary choices. There is, therefore, substantial evidence to supports the Commissioner's decision.

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of February, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE